UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16CV-00298-DW

**DANIELLE L. MCNABB**                                                                                   **PLAINTIFF**

**VS.**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                                                      **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

The Commissioner of Social Security denied Danielle L. McNabb's ("McNabb") applications for supplemental security income benefits and disability insurance benefits. McNabb seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Both McNabb (DN 17) and the Commissioner (DN 22) have filed a Fact and Law Summary. Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 16).

### FINDINGS OF FACT

Danielle McNabb is 39-years-old, has a seventeen-year-old daughter (Tr. 41), and lives a government-housing townhouse in Bardstown, Kentucky (Tr. 44). McNabb has her GED (Tr. 41) but does not have a driver's license. (Tr. 44-45). She can perform tasks like making dinner or

washing the dishes in stages. (Tr. 46). To pass time she reads novels, watches television, and spends time with her daughter. (Tr. 49).

McNabb does not have an extensive work history but had a job at First Friends Childcare from 2005-2007, caring for newborn to school-aged children. (Tr. 42, 52). She claims that her back pain started in 2007 when one of the children at work jumped into her arms and knocked her down. (Tr. 52). This incident led to her first being diagnosed with degenerative disc disease. (*Id.*). McNabb cites her back pain and numbness in her feet and legs as the most serious obstacles preventing her from working. (Tr. 50).

McNabb applied for supplemental security income benefits ("SSI") under Title XVI and disability insurance benefits ("DIB") under Title II, claiming that she became disabled on June 1, 2010, (Tr. 201-09) as a result of coronary artery disease, degenerative disc disease, acid reflux, depression, diabetes, and diverticulitis. (Tr. 228). Her applications were denied initially and again on reconsideration. (Tr. 81, 92, 102, 114). Administrative Law Judge Roland D. Mather ("ALJ") conducted a hearing in Louisville, Kentucky, on April 3, 2015. (Tr. 38). McNabb attended the hearing with her attorney. (*Id.*). Tina Stambaugh, an impartial vocational expert also testified at the hearing. (*Id.*). The ALJ issued an unfavorable decision on June 12, 2015. (Tr. 32).

The ALJ applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R § 404.1520; *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, McNabb has not engaged in substantial gainful activity since her alleged onset date. (Tr. 23). Second, McNabb has the severe impairments of: "degenerative disc disease, diabetes mellitus with peripheral neuropathy, coronary artery disease, and obesity[.]" (*Id.*). Third, none of McNabb's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 25).

Fourth, McNabb has the residual functional capacity ("RFC") to perform light work, "except that she can lift up to 30 lbs . . . [and] needs a clean air environment with no excess exposure to dust, fumes, noxious odors, gases, and poorly ventilated areas." (Tr. 26). Additionally, McNabb is unable to perform any of her past relevant work. (Tr. 31). Fifth and finally, considering McNabb's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (*Id.*).

McNabb appealed the ALJ's decision. (Tr. 14). The Appeals Council declined review. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and McNabb appealed to this Court. (DN 1).

## CONCLUSIONS OF LAW

### A. Standard of Review

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993).

B. Analysis

McNabb brings three challenges to the ALJ's Finding No. 5, which evaluates McNabb's residual functional capacity ("RFC"). The RFC finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. The Administrative Law Judge bases his RFC finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

1. Dr. Abramovich's Opinion

McNabb claims that the ALJ erred in affording little weight to Dr. Abramovich's opinion under the treating physician rule. (DN 17, at p. 11). Specifically, McNabb believes Dr. Abramovich's opinion is supported by later evidence in the record, including two lumbar MRIs. (*Id.* at p. 12). The Commissioner counters that the ALJ properly discounted Dr. Abramovich's opinion by identifying inconsistent clinical findings in her treatment notes and noting the opinion was inconsistent with McNabb's conservative treatment. (DN 22, at pp. 3-7).

The source of a medical opinion dictates the process by which the Administrative Law Judge gives it weight. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Treating sources must be given controlling weight if their opinion is "well supported by medically accepted clinical and laboratory diagnostic techniques" and is "not inconsistent with other substantial evidence" in the claimant's case record. 20 C.F.R. § 404.1527(c)(2); *Gayheart*, 710 F.3d at 376. If the Administrative Law Judge determines a treating source should not receive controlling weight, he applies factors from the regulations to determine the appropriate weight to assign the opinion. These factors include the length, nature, and extent of the treatment relationship, the supportability and consistency of the opinion compared to other evidence in the

record, and the treating source's area of specialty.[1]  20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  The Administrative Law Judge must also provide "good reasons" in his decision for the weight being assigned to the treating source opinion.  20 C.F.R. § 404.1527(c)(2); *Gayheart*, 710 F.3d at 376.

The ALJ, here, gave "little weight" to Dr. Abramovich's treating physician opinion based on the factors in 20 C.F.R. § 404.1527(c).  (Tr. 30).  The ALJ identified Dr. Abramovich as McNabb's "family physician" and noted that this provider began seeing McNabb in April of 2013 and saw her on four occasions in 2013, six occasions in 2014, and two occasions in 2015. (*Id.*).  Dr. Abramovich's treatment, the ALJ noted, included referrals for diagnostic testing, which revealed only mild to moderate impairment, and brief clinical examinations revealing mild impairment. (*Id.*).  The ALJ explained that Dr. Abramovich's treatment notes detailed "generally routine, conservative treatment with mainly medication management" and referrals for specialist treatment, which was also generally conservative. (*Id.*).  The ALJ concluded that "[t]hese only mild to moderate diagnostic and clinical findings, which are also found in the medical evidence as a whole, do not support the limitations set out by this physician." (*Id.*).

After reviewing Dr. Abramovich's opinion and the record evidence, the undersigned agrees with the ALJ's conclusion that the significant limitations listed by Dr. Abramovich are inconsistent with his treatment notes.  Dr. Abramovich's "physical capacity medical source document" from May of 2013 diagnosed McNabb with diabetes mellitus, peripheral neuropathy, degenerative disc disease, and dyslipidemia.  (Tr. 800).  But mere diagnosis of an impairment says nothing about the severity of the condition and does not, alone, establish that a condition is

---

[1] Nevertheless, the regulations do not require an exhaustive factor-by-factor analysis to satisfy the rule.  *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011).

disabling. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *see also Cooney v. Colvin*, No. 4:14CV-00059-HBB, 2015 WL 632312, at *6 (W.D. Ky. Feb. 13, 2015).

It is also worth noting that Dr. Abramovich's opinion from May 2, 2013, is basically a "check-box analysis" with a few fill in the blank questions. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) (noting that reports, where the physician's only obligation is to check a box or fill in a blank, are generally weak evidence at best). Dr. Abramovich checked boxes indicating that McNabb could cumulatively work zero hours per day, would likely be absent three times a month from work, has constant pain and symptoms severe enough to interfere with attention and concentration, has severe limitation in ability to deal with stress, could sit less than two hours in an eight-hour day and stand/walk less than two hours in an eight-hour day, has constant issues with persistence and pace in performing activities affected by her symptoms, and apparently that she could never lift and carry any weight.[2] (Tr. 800).

Although Dr. Abramovich wrote a couple of brief notes in the margins of his opinion, these notes are not medical findings supporting his conclusions. For instance, Dr. Abramovich wrote "Full Time Disability" in the margin next to a question asking "[w]ould the patient likely be absent from work as a result of impairments[?]" (Tr. 800). Additionally, after answering that McNabb could walk zero city blocks without rest or severe pain, Dr. Abramovich added "no sustained walking" to his answer. (*Id.*). Dr. Abramovich also noted that McNabb has restrictions in movement of her spinal cord and that "other limitations that would affect [her] ability to work/sustain an 8-hour day" include insulin reaction issues and fatigue. (*Id.*).

---

2 Question 15 on the evaluation reads: "How many pounds can your patient lift and carry in a competitive work situation?" (Tr. 800). In answering the question, Dr. Abramovich circled "never" and placed a check-mark next to "less than 5 lbs." (*Id.*). Based on these answers, it appears Dr. Abramovich found that McNabb could never lift and carry any weight.

In contrast, Dr. Abramovich's treatment notes tell a different story. The physical exam notes from McNabb's first visit with Dr. Abramovich detail that McNabb's joints, bones, and muscles were normal on inspection and palpation, that muscle strength and tone was normal, that her spine had normal alignment and range of motion, and that her neck was supple and symmetric. (Tr. 540). As a whole, Dr. Abramovich's treatment notes from 2013 consistently indicated that McNabb was in no acute distress (Tr. 519, 526, 531, 537, 540), that her gait and station were within normal limits (Tr. 520, 526, 540), and that she had normal respiratory effort (Tr. 520, 526, 540). Dr. Abramovich's only objective note indicating musculoskeletal abnormalities was on August 14, 2013, when he mentioned "multiple nodules on [McNabb's] bilateral legs and swelling of the joints about 1 nonpitting." (Tr. 520).

Similarly, throughout 2014, Dr. Abramovich and others at Flaget Primary Care Associates frequently found that McNabb had no acute distress, had normal gait, and had unlabored respiratory effort during physical exam.[3] (Tr. 676, 682, 689, 696, 719). In March of 2014, McNabb saw Dr. Abramovich for knee pain and swelling, but physical exam notes revealed her gait and station were within normal limits, her spine had normal alignment and range of motion, and the knee joint was stable on the right and subluxated on the right. (Tr. 719). Although the treatment notes from July and September of 2014 indicate "tenderness with palpation," "swelling and abnormal spinal curvature," and "limited range of motion" (Tr. 696, 701), these observations still do not equate with the restrictive limitations and finding of total disability in Dr. Abramovich's opinion.

---

3 Further, diagnostic imaging ordered by Dr. Abramovich from March 4, 2014 to January 19, 2015 indicated "very mild early changes of osteoarthritis with no acute bony abnormality" in her left knee (Tr. 667), "mild degenerative changes [in her] lower lumbar spine" (Tr. 669), and "no acute cardiopulmonary process" (Tr. 671).

McNabb believes that two MRIs post-dating Dr. Abramovich's opinion support his stringent limitations. The first MRI, on December 4, 2014, revealed "asymmetric disc protrusion toward the right at the L4-L5 level" and "[m]oderate stenosis of the right neural foramen." (Tr. 652). The second MRI, taken two months later, indicated "degenerative disc disease with a small L4-L5 central disc herniation and a large central and left paracentral L5-L6 disc herniation." (Tr. 651). While these MRIs demonstrate abnormality of McNabb's spine, McNabb fails to demonstrate that these tests lend credence to Dr. Abramovich's finding of "full time disability." (Tr. 800).

McNabb also claims that the ALJ improperly subordinated Dr. Abramovich's opinion to that of the consultative examiner. (DN 17, at p. 14). The ALJ, however, did not simply adopt the consultative examiner's opinion. Rather, the ALJ gave great weight to the consultative examiner's limitation regarding lifting up to 30 pounds but gave little weight to the examiner's restrictions regarding minimal limitation of walking, standing, or sitting. (Tr. 30). As such, the ALJ's RFC determination is more restrictive than the consultative examiner's opinion. Regardless of the weight the ALJ afforded to the consultative examiner's opinion, the ALJ's decision to not afford Dr. Abramovich's opinion controlling weight addressed the appropriate regulation factors and listed good reasons for his weight determination. The Court finds the ALJ's decision to afford Dr. Abramovich's opinion little weight is supported by substantial evidence in the record and comports with the applicable regulations.

## 2. Credibility Determination

McNabb next argues that the ALJ's credibility determination is not supported by substantial evidence. (DN 17, at p. 14). McNabb emphasizes that her mother, boyfriend, and daughter all submitted reports indicating that her condition was worsening, but the ALJ discounted

these statements without corroborating evidence. (*Id.*at pp. 15-16). She again points to the MRIs from December of 2014 and February of 2015 to support the worsening of her conditions. (*Id.*). In opposition, the United States contends that the ALJ was not obligated to accept the subjective allegations of third-party witnesses and the claimant if evidence in the record fails to support such allegations. (DN 22, at pp. 9-11).

When the Administrative Law Judge evaluates credibility, a claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled. *See* 20 C.F.R. § 404.1529(a); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). There must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to produce the pain alleged. *Walters*, 127 F.3d at 530; *Duncan*, 801 F.2d at 854. In making his evaluation, the Administrative Law Judge considers objective medical evidence, as well as other factors such as evidence of daily activities, the frequency and intensity of pain, medication taken and any resulting side effects, and any other measures taken to alleviate the pain. *See* 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (c)(3).

In determining whether a claimant suffers from debilitating pain and other symptoms, the Sixth Circuit applies the two-part test set forth in *Duncan*, 801 F.2d at 853. First the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition. *Duncan*, 801 F.2d at 853. Here, the ALJ concluded that McNabb's medically determinable impairments "could reasonably be expected to cause the alleged symptoms." (Tr. 27). Next, the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical opinion is of such severity that it can reasonably be

expected to produce the alleged disabling pain." *Duncan*, F.2d at 853. Here, the ALJ found that McNabb's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" because the objective evidence does not support that her conditions are as limiting as she alleges. (Tr. 28-29).

The ALJ offered several reasons for discounting McNabb's credibility. First, the ALJ explained that even though McNabb consistently reported lower back pain, the diagnostic evidence indicates only mild impairment with no evidence of nerve root involvement. (Tr. 29). The ALJ also cites to McNabb's clinical examinations revealing no motor or sensory deficits, normal station and gait, and wholly conservative treatment with medication, epidural injections, and physical therapy. (*Id.*). Moreover, the ALJ noted that despite McNabb's complaints, she "retains the ability to cook, do dishes, care for her personal needs, shop, go to the mall, receive visitors, read, watch television, and manage money." (*Id.*). The ALJ lastly commented that McNabb has "never been closely attached to the workforce" and, because of that, it is reasonable to assume that "some reason other than any debilitating condition has kept her from working." (Tr. 29-30).

The ALJ thoroughly supported his decision to discount McNabb's credibility by discussing her treatment, examinations, emergency room visits, medication, and daily activities. Further, the MRIs indicating slight worsening of her back condition and Dr. Boakye's recommendations for physical therapy and injections, on which McNabb relies, do not reflect the disabling conditions she describes. The ALJ's decision to discount McNabb's credibility is, therefore, supported by substantial evidence.

Likewise, McNabb's argument that it was improper for the ALJ to discount the third-party reports of her mother, boyfriend, and daughter is unpersuasive. As identified by McNabb, the

10

Sixth Circuit generally requires that when lay witness testimony is provided, an Administrative Law Judge cannot disregard it without comment but, rather, must "give reasons for not crediting the testimony that [is] germane to each witness." *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012). Yet when an Administrative Law Judge discusses at length the objective medical evidence, she is not required to give a separate review of a third party statement. *See Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 842 (6th Cir. 2005) (finding the ALJ did not err in failing to mention letter from claimant's mother).

      Here, the ALJ explicitly weighed these third-party reports, determining that the "ever-declining limitations" identified by McNabb's mother, boyfriend, and daughter are not supported by corresponding worsening of the diagnostic and clinical evidence. (Tr. 29). The ALJ also detailed the content of these third-party reports. The ALJ noted McNabb's mother's comments that she uses a walker, wheelchair and motorized carts and that she needs help with bathing, cooking, dressing, and shopping. (Tr. 27). The ALJ also discussed McNabb's boyfriend's statement that he helps her bathe and dress and that her condition worsens when she does housework and McNabb's daughter's statements that she switched to home-schooling to help her mother more and that McNabb "struggles every day and is getting worse[.]" (*Id.*). These reports, the ALJ concluded, do not comport with the record evidence demonstrating "only mildly to moderately impaired diagnostic and clinical evidence" and evidence that McNabb's impairments are generally stable with routine, conservative treatment. (Tr. 29). Because the ALJ discussed the objective medical evidence at length and discussed all three lay witness reports in his decision, the Court finds the credibility determinations in the RFC are supported by substantial evidence.

3. Vocational Expert Hypotheticals

McNabb also briefly states that the vocational expert's hypothetical did not accurately portray her conditions as set forth in the record and in Dr. Abramovich's opinion. (DN 17, at p. 14). McNabb relies on case law stating that a vocational expert's testimony must be based on "a hypothetical question which accurately portrays the claimant's physical and mental impairments." (*Id.*). While that statement is correct, there is no requirement that the ALJ's hypothetical question to a vocational examiner reflect the claimant's unsubstantiated complaints. *Retka v. Comm'r of Soc. Sec.*, 70 F.3d 1272, 1995 WL 697215, at *2 (6th Cir. 1995) (unpublished). It is well established that the hypothetical questions need only incorporate those limitations which the Administrative Law Judge has accepted as credible. *Infantado v. Astrue*, 263 F. App'x 469, 476-77 (6th Cir. 2008) (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). For the reasons outlined above, the ALJ's decisions to give little weight to Dr. Abramovich's opinion and to discount McNabb's credibility are supported by substantial evidence. Thus, the ALJ did not err in declining to incorporate each of Dr. Abramovich's restrictive limitations into his hypotheticals to the vocational expert. *See Infantado*, 263 F. App'x at 477.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Copies:     Counsel